FILED
2023 Mar-13  AM 10:05
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## EASTERN DIVISION

| | | |
|---|---|---|
| **CHRISTIE DENSMORE CURRY,** | ) | |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | |
| | ) | |
| **COMMISSIONER, SOCIAL** | ) | **Case No.: 1:21-cv-1489-AMM** |
| **SECURITY** | ) | |
| **ADMINISTRATION,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OF DECISION

Plaintiff Christie Densmore Curry brings this action pursuant to the Social Security Act (the "Act"), seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying her claim for supplemental security income. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Based on the court's review of the record, the court **AFFIRMS** the decision of the Commissioner.

## I.     Introduction

On September 10, 2019, Ms. Curry filed an application for supplemental security income under Title XVI of the Act, alleging disability beginning September 10, 2019. R. 34, 102–13, 211–12. Ms. Curry alleges disability due to asthma, headaches, irritable bowel syndrome ("IBS"), hypothyroidism, high blood pressure,

neuropathy, and depression. R. 102. She has a limited education and no past relevant work experience. R. 44.

The Social Security Administration ("SSA") initially denied Ms. Curry's application on November 21, 2019, and again denied it upon reconsideration on March 5, 2020. R. 34, 102–27. On April 27, 2020, Ms. Curry filed a request for a hearing before an Administrative Law Judge ("ALJ"). R. 34, 139. That request was granted. R. 140–42. Ms. Curry received a telephone hearing before ALJ Renita F. Barnett-Jefferson on January 20, 2021. R. 34, 50–92. On March 3, 2021, ALJ Barnett-Jefferson issued a decision, finding that Ms. Curry was not disabled from September 10, 2019 through the date of her decision. R. 34–45. Ms. Curry was forty-two years old at the time of the ALJ decision. R. 44–45, 102.

Ms. Curry appealed to the Appeals Council, which denied her request for review on September 17, 2021. R. 1–4. After the Appeals Council denied Ms. Curry's request for review, R. 1–4, the ALJ's decision became the final decision of the Commissioner and subject to district court review. On November 8, 2021, Ms. Curry sought this court's review of the ALJ's decision. *See* Doc. 1.

## II.    The ALJ's Decision

The Act establishes a five-step test for the ALJ to determine disability. 20 C.F.R. § 416.920. *First*, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(i). "Substantial work

activity is work activity that involves doing significant physical or mental activities." 20 C.F.R. § 416.972(a). "Gainful work activity" is work that is done for pay or profit. 20 C.F.R. § 416.972(b). If the ALJ finds that the claimant engages in substantial gainful activity, then the claimant cannot claim disability. 20 C.F.R. § 416.920(b). *Second*, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. § 416.920(a)(4)(ii), (c). Absent such impairment, the claimant may not claim disability. *Id*. *Third*, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 416.920(d), 416.925, 416.926. If such criteria are met, the claimant is declared disabled. 20 C.F.R. § 416.920(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ still may find disability under the next two steps of the analysis. The ALJ must first determine the claimant's residual functional capacity, which refers to the claimant's ability to work despite her impairments. 20 C.F.R. §§ 416.920(e), 416.945. In the *fourth* step, the ALJ determines whether the claimant has the residual functional capacity to perform past relevant work. 20 C.F.R. § 416.920(a)(4)(iv). If the ALJ determines that the claimant is capable of performing past relevant work, then the claimant is deemed not disabled. *Id*. If the

ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the *fifth* and final step. 20 C.F.R. § 416.920(a)(4)(v). In this step, the ALJ must determine whether the claimant is able to perform any other work commensurate with her residual functional capacity, age, education, and work experience. 20 C.F.R. § 416.920(g)(1). Here, the burden of proof shifts from the claimant to the Commissioner to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given her residual functional capacity, age, education, and work experience. 20 C.F.R. §§ 416.920(g)(1), 416.960(c).

The ALJ found that Ms. Curry had not engaged in substantial gainful activity since her application date. R. 37. The ALJ decided that Ms. Curry had the following severe impairments: lupus with chronic pain syndrome, asthma, headaches, hypertension, hypothyroidism, and obesity. R. 37. The ALJ found that Ms. Curry's gastro esophageal reflux disease was not severe because "the medical evidence does not establish that it significantly limits [Ms. Curry's] ability to perform basic work activities." R. 37. The ALJ also found that Ms. Curry's depression was not severe because it "causes no more than mild limitation in any of the functional areas and the evidence does not otherwise indicate that there is more than a minimal limitation in [Ms. Curry's] ability to do basic work activities." R. 37–38 (cleaned up). Overall, the ALJ determined that Ms. Curry did not have "an impairment or combination of

4

impairments that meets or medically equals the severity of one of the listed impairments" to support a finding of disability. R. 38.

The ALJ found that Ms. Curry had the "residual functional capacity to perform light work" with certain limitations. R. 39. The ALJ determined that Ms. Curry may: occasionally push and pull with hand and foot controls; occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl; frequently reach overhead, bilaterally; and occasionally be exposed to extreme heat and vibration. R. 39. The ALJ also determined that Ms. Curry must not: climb ladders or scaffolds; work around unprotected heights or hazardous moving parts; or operate a motor vehicle for commercial purposes. R. 39.

According to the ALJ, Ms. Curry "has no past relevant work." R. 44. According to the ALJ, Ms. Curry is "a younger individual," and she has "a limited education," as those terms are defined by the regulations. R. 44. The ALJ determined that "[t]ransferability of job skills is not an issue because [Ms. Curry] does not have past relevant work." R. 44. Because Ms. Curry's "ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations," the ALJ enlisted a vocational expert to ascertain "the extent to which these limitations erode the unskilled light occupational base." R. 45. That expert testified that such individual "would be able to perform the requirements of

representative occupations that are light and unskilled such as parking lot attendant . . . , housekeeper . . . [,] and a marker." R. 45.

Based on these findings, the ALJ concluded that Ms. Curry had not been under a disability, as defined in the Act, since September 10, 2019. R. 45. Ms. Curry now challenges that decision.

## III. Factual Record

The medical records in the file precede the alleged onset date. They include treatment at Quality of Life Health Services for: hypertension, R. 386, 390 (2012), R. 397, 399 (2013), R. 405, 410 (2014), R. 438, 449 (2015), R. 468 (2016); depression, R. 386, 390 (2012), R. 415 (2014); hypothyroidism, R. 389 (2012), R. 424 (2015); abdominal pain, R. 390 (2012), R. 399 (2013), R. 405, 410 (2014), R. 424 (2015); sleep apnea, R. 393 (2012), R. 429 (2015); esophageal reflux, R. 397 (2013); shortness of breath, R. 424 (2015); pain and numbness in foot, R. 444, 456 (2015); and pelvic pain, R. 461 (2016).

Ms. Curry presented to the emergency department at RMC Jacksonville on April 17, 2017 with chest pain and left arm pain and numbness that she had been experiencing for two weeks. R. 361. An x-ray of her chest found: "Please note lateral view is limited due to factors related to patient body habitus. The lungs are clear. No mass or consolidation. No pneumothorax or pleural effusion. The cardiomediastinal silhouette is unremarkable. . . . No acute chest findings identified." R. 357. Her EKG

6

was normal. R. 364. Ms. Curry was prescribed acetaminophen, discharged, advised to follow up with her primary care physician, and advised to return to the emergency department if her symptoms worsened. R. 364.

Ms. Curry presented to the emergency department at Gadsden Regional Medical Center by ambulance on April 30, 2017 complaining of right flank pain for the past four days. R. 380. A CT scan of her abdomen and pelvis found: "1. No evidence of renal stone. 2. Fibroid uterus." R. 378. Ms. Curry was diagnosed with renal colic on right side. R. 382.

Ms. Curry's records from Quality of Life Health Services indicate her first visit with Dr. Tariq Muhammad was on December 6, 2017, when she presented for back pain, IBS, hypertension, and hypothyroidism. R. 474. Ms. Curry reported that her pain was in her lower back and was "aggravated by bending, lifting, lying/rest, standing[,] and twisting." R. 474. Ms. Curry reported taking Ibuprofen for pain and requested "something stronger." R. 474. Ms. Curry reported abdominal pain and bloating with her IBS, and that she was taking Dicyclomine and Linzess. R. 474. Ms. Curry also reported taking metoprolol, Dicyclomine, and HCTZ for hypertension and Levothyroxine for hypothyroidism. R. 474. The medical records also note Ms. Curry's obesity, R. 474, indications of depressive disorder, R. 476, and gastro-esophageal reflux disease, R. 481.

Ms. Curry presented to the emergency department at RMC Jacksonville on March 20, 2018 for pain on the left side of her head, which radiated to the left side of her neck and her left shoulder and had been present for three days. R. 346, 350. An x-ray of her shoulder found: "No acute fracture or dislocation. Slight irregularity of the distal clavicle involving the acromioclavicular joint could represent bone resorption from degenerative changes, metabolic disorder or infection. Correlate clinically." R. 342. An x-ray of her cervical spine found: "No acute fracture or subluxation. Anterior osteophyte/enthesophyte formation at C6–7. No suspicious osseous lesion." R. 344. Mr. Curry was discharged with prescriptions for ultracet and ciclobenzaprime and advised to follow up with out-patient care. R. 348.

Ms. Curry has a history of headaches and presented to the Gadsden Regional Medical Center on January 2, 2019. R. 374. Ms. Curry reported chronic, constant headaches for more than one year. R. 374. Ms. Curry also reported that she had "last seen a healthcare provider in March 2018." R. 374. Ms. Curry reported scalp pain and swelling, and denied blurred vision, weakness, and dizziness. R. 374. She underwent a CT scan of her brain that found: "No mass, midline shift, extra-axial fluid collection, hemorrhage, or evidence of acute territorial infarct. No fracture. No acute sinus disease." R. 372. The impression from the CT scan was: "No acute intracranial abnormality." R. 372. The physical exam of Ms. Curry's musculoskeletal system revealed "Normal ROM, normal strength, no tenderness, no

swelling, no deformity." R. 375. The physical exam of Ms. Curry's back revealed: "Nontender, Normal range of motion, Normal alignment, no step-offs." R. 375. Ms. Curry was prescribed naproxen and Flexeril, advised to return to the emergency department if symptoms worsened, and advised to follow up with Quality of Life Health Services. R. 377.

Ms. Curry returned to Dr. Muhammad on January 8, 2019 for headaches, hair falling out, and bilateral neck pain. R. 483. At the visit, Dr. Muhammad also addressed her gastro-esophageal reflux disease. R. 483. Her physical exam results were normal, and she was advised to take medications as directed, continue present care, schedule a follow-up visit in one month, and implement a diet and exercise program. R. 488–89. Ms. Curry returned to Dr. Muhammad on August 6, 2019 complaining of headaches and muscle spasm. R. 491. Ms. Curry reported that at the time her pain level from headaches was 0/10, and she requested a brain MRI. R. 491. Ms. Curry also reported that her muscle spasms resulted in bruising and decreased mobility. R. 491. Her physical exam results were normal, and she was advised to continue taking medications, implement a diet and exercise plan, and continue present care. R. 496–97.

Ms. Curry completed a telemedicine visit with Dr. Muhammad on April 2, 2020, when she presented with hypertension, thyroid problems, and headaches. R. 569. Ms. Curry was to continue present care for hypertension and schedule a follow-

up appointment in three months. R. 574. She was referred to radiology for brain imaging with and without contrast. R. 574. On July 1, 2020, Ms. Curry presented to Dr. Muhammad for headaches, chronic pain, and edema. R. 578. Ms. Curry requested pain medicine for her chronic pain and neuropathy and water pills for her edema. R. 578. Ms. Curry was advised to take medications as directed, perform back exercises for low back pain, and keep her legs elevated for edema. R. 583. She was also referred "to pain management for chronic pain." R. 583.

Ms. Curry underwent an MRI with and without contrast on July 8, 2020 for "Headache, mass along the left side of the head." R. 632. The imaging report stated: "'Mass' was marked along the left side of the head. The no (sic) solid or cystic lesion. This is prominent subcutaneous tissues and muscular structures similar to the right side." R. 632. Ms. Curry's MRI was "Unremarkable." R. 632.

Ms. Curry returned to Dr. Muhammad on July 13, 2020 to discuss the results of her MRI. R. 587. At the time she stated that "she [wa]s having severe headache[s], neck and back pain," and "joint pain and stiffness" and was "not able to work because of chronic pain." R. 587. Ms. Curry also stated that "she has no insurance and cannot afford to go to pain management, [the] neurologist[,] and tests" and reported that lupus and rheumatoid arthritis "runs in [her] family" and she "would like to be tested for it." R. 587. With respect to her headaches, Dr. Muhammad informed her that her MRI had "no acute findings" and she should take Excedrin

10

Migraine. R. 592. Dr. Muhammad also planned to run labs for her joint pain, and recommended back and neck exercises. R. 592.

Ms. Curry returned to Dr. Muhammad on August 3, 2020 for tests results, hypertension, and headaches. R. 595. Dr. Muhammad reported that Ms. Curry "likely [had] lupus with symptoms of fatigue and hair falling" out. R. 595. She was to start Plaquenil and was referred to an optometrist and rheumatology. R. 600. Ms. Curry returned to Dr. Muhammad on August 11, 2020 for test results. R. 604. Her assessment was described as "Mixed connective tissue disease . . . Symptomatic." R. 607. Her patient plan was to start Plaquenil, get an eye exam, to see rheumatology at UAB in January because of her lack of insurance, and "to schedule a follow-up visit if symptoms worsen." R. 607. Ms. Curry's ANA IFA test, to detect various autoimmune diseases, was positive. R. 610. The interpretation section of the test results states: "RNP antibody is found in patients with mixed connective tissue disease . . . . This antibody may also be seen in systemic lupus erythematosus and other connective tissue diseases." R. 611; *see also* R. 634–38.

Ms. Curry returned to Dr. Muhammad on October 1, 2020 for bronchitis and musculoskeletal pain. R. 648. She reported "decreased mobility, difficulty initiating sleep[,] and joint instability." R. 648. Ms. Curry "state[d] she is hurting because of lupus and would like to have pain meds," but "cannot afford pain management." R. 648. Ms. Curry was scheduled for an appointment at UAB in January 2022. R. 648.

The assessment in the medical records indicates Ms. Curry's systemic lupus erythematosus was "[p]oorly controlled," and she was advised to "continue Plaquenil and take Norco as needed." R. 654. She was also advised to continue her present care for headaches. R. 654.

Ms. Curry returned to Dr. Muhammad on October 29, 2020 for hypertension, lupus, edema, and headaches. R. 657. She was advised to continue her present care. R. 661. Ms. Curry returned to Dr. Muhammad on November 12, 2020 for edema and chronic pain. R. 664. She reported that she was "taking Lasix and HCTZ and her swelling [wa]s not going down," and she was "having chronic pain and chronic headache[s]," but was "not able to get into pain management because of lack of insurance." R. 664. Dr. Muhammad increased her Lasix, planned to refer her "to pain management when she can afford" it, and advised her to continue her present care. R. 668.

Ms. Curry returned to Dr. Muhammad on December 4, 2020 for hypertension and cough. R. 671. At the time, her hypertension was stable. R. 671. She was diagnosed with bronchitis, but she was negative for gastrointestinal symptoms, neurological symptoms (including weakness, gait disturbance, headaches, and numbness in extremities), and psychological symptoms. R. 675.

## IV.    Standard of Review

This court's role in reviewing claims brought under the Act is a narrow one. The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. §§ 405(g), 1383(c)(3); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The Act mandates that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990); *see* 42 U.S.C. §§ 405(g), 1383(c)(3). This court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the record as a whole and determine if the decision is reasonable and supported by substantial evidence. *See Martin*, 894 F.2d at 1529 (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239). If the Commissioner's factual findings are supported by substantial evidence, they must be affirmed even if the preponderance of the evidence is against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. No decision is automatic, for "[d]espite th[e] deferential standard [for review of claims],

it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)). Failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## V.    Discussion

Ms. Curry alleges that the ALJ's decision should be reversed because the ALJ "fail[ed] to properly credit Ms. Curry's pain and exertional and non-exertional impairments." Doc. 10 at 3. Additionally, Ms. Curry alleges that the Commissioner erred "by not considering the residual functional capacity evaluation of Ms. Curry's treating physician, Dr. Tariq Muhammad." *Id.* Ms. Curry also argues that the "ALJ erred when she denied Ms. Curry's request that she be sent for a consultative examination and made a decision that she had sufficient evidence in the record to make a determination regarding Ms. Curry's disability." *Id.* at 11.

### A. The ALJ's Application of the Pain Standard

A claimant's subjective complaints are insufficient to establish a disability. *See* 20 C.F.R. § 416.929(a); *Edwards v. Sullivan*, 937 F.2d 580, 584 (11th Cir. 1991). Subjective testimony of pain and other symptoms may establish the presence of a disabling impairment if it is supported by medical evidence. *See Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995). The Eleventh Circuit applies a two-part pain

14

standard when a claimant claims disability due to pain or other subjective symptoms. The claimant must show evidence of an underlying medical condition and either (1) objective medical evidence that confirms the severity of the alleged symptoms arising from the condition, or (2) that the objectively determined medical condition is of such severity that it can reasonably be expected to give rise to the alleged symptoms. *See* 20 C.F.R. § 416.929(a), (b); Social Security Ruling 16-3p, 2017 WL 5180304, at *3–*4 (Oct. 25, 2017) ("SSR 16-3p"); *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002).

If the first part of the pain standard is satisfied, the ALJ then evaluates the intensity and persistence of a claimant's alleged symptoms and their effect on her ability to work. *See* 20 C.F.R. § 416.929(c); *Wilson*, 284 F.3d at 1225–26. In evaluating the extent to which a claimant's symptoms affect her capacity to perform basic work activities, the ALJ will consider (1) objective medical evidence, (2) the nature of a claimant's symptoms, (3) the claimant's daily activities, (4) precipitating and aggravating factors, (5) the effectiveness of medication, (6) treatment sought for relief of symptoms, (7) any measures the claimant takes to relieve symptoms, and (8) any conflicts between a claimant's statements and the rest of the evidence. *See* 20 C.F.R. § 416.929(c)(3), (4); SSR 16-3p at *4, *7–*8. "In determining whether a claimant's impairments limit her ability to work, the ALJ considers the claimant's subjective symptoms, which includes the effectiveness and side effects of any

medications taken for those symptoms." *Walker v. Comm'r*, 404 F. App'x 362, 366 (11th Cir. 2010). To discredit a claimant's statements, "the ALJ must clearly 'articulate explicit and adequate reasons.'" *See Dyer*, 395 F.3d at 1210.

An ALJ's review "must take into account and evaluate the record as a whole." *McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986). There is no rigid requirement that the ALJ specifically refer to every piece of evidence in her decision. *Jacobus v. Comm'r of Soc. Sec.*, 664 F. App'x 774, 776 (11th Cir. 2016). Instead, the ALJ must consider the medical evidence as a whole and not broadly reject the evidence in the record. *Id.*

A credibility determination is a question of fact subject only to limited review in the courts to ensure the finding is supported by substantial evidence. *See Hand v. Heckler*, 761 F.2d 1545, 1548–49 (11th Cir. 1985), *vacated for rehearing en banc*, 774 F.2d 428 (11th Cir. 1985), *reinstated sub nom., Hand v. Bowen*, 793 F.2d 275 (11th Cir. 1986). The Eleventh Circuit will not disturb a clearly articulated finding supported by substantial evidence. *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014). However, a reversal is warranted if the decision contains no indication of the proper application of the pain standard. *See Ortega v. Chater*, 933 F. Supp. 1071, 1076 (S.D.F.L. 1996) (holding that the ALJ's failure to articulate adequate reasons for only partially crediting the plaintiff's complaints of pain resulted in reversal). "The question is not . . . whether [the] ALJ could have

reasonably credited [claimant's] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011).

*First*, Ms. Curry argues that "[t]he ALJ erred by discrediting [her] pain testimony and regarding her limitations." Doc. 10 at 12. *Second*, Ms. Curry argues "that the severity and duration of the symptoms is well supported by the totality of the evidence." *Id.* at 14.

After describing the pain standard, the ALJ noted that "whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must consider other evidence in the record to determine if the claimant's symptoms limit the ability to do work-related activities." R. 39.

The ALJ considered Ms. Curry's report and testimony about her symptoms in the analysis of Ms. Curry's residual functional capacity. R. 40–41. In her function report, Ms. Curry:

> reported that she is able to care for her personal needs but it takes her longer because her hands go numb. [Ms. Curry] stated that she cares for her cousins on the weekend. She indicated that she is able to prepare meals and she can do laundry. [Ms. Curry] stated that she is able to use public transportation, shop in stores, pay bills, count change[,] and handle a savings account and checkbook/money orders. She reported that her hobbies are reading, playing card games[,] and she is able to spend time with others on the telephone. [Ms. Curry] stated that

17

> her conditions affect most of her physical abilities and her
> ability to complete task[s]. She stated that she is able to
> follow spoken instructions but not written instructions.
> [Ms. Curry] reported that she is able to get along with
> others but she cannot handle changes in routine.

R. 40 (cleaned up). The ALJ described Ms. Curry's hearing testimony as follows:

> At the hearing, [Ms. Curry] testified that she stand[s] 5
> foot 7 ½ inches tall. She stated that she weighs 315 pounds.
> . . . [Ms. Curry] testified that she has pain in her legs and
> back and it is hard to get around. She stated that she cannot
> lift and has problems bending due to back pain. [Ms.
> Curry] stated that she cannot clean house and has pain
> most of the day. She stated that she lays in the bed most of
> the day. She stated that she has Lupus and her hair is
> falling out. She reported medication side effects of
> dizziness, fatigue[,] and headaches. [Ms. Curry] stated that
> she has hypertension and hyperthyroidism. [Ms. Curry]
> reported having edema with swelling in her legs, face[,]
> and feet. She reported numbness in her feet and hands and
> she has neuropathy. She testified that she has irritable
> bowel syndrome with constipation and diarrhea. She
> stated that she has not had a sleep study due to insurance.
> She testified that she has a tumor on the outside of her
> brain and has vision problems. She stated that she has
> problems walking due to her legs giving out. She stated
> that she has depression and her physical conditions
> prevent her from working.

R. 40–41.

The ALJ found "that [Ms. Curry's] medically determinable impairments

could reasonably be expected to cause the alleged symptoms," but Ms. Curry's

"statements concerning the intensity, persistence[,] and limiting effects of these

symptoms are not entirely consistent with the medical evidence and other evidence

in the record." R. 41. The ALJ stated that Ms. Curry's "statements about the intensity, persistence, and limiting effects of her symptoms . . . are inconsistent because the medical evidence does not reveal that her conditions are disabling." R. 41.

In making this determination, the ALJ considered the objective medical evidence from RMC Jacksonville, Gadsden Regional Medical Center, and Quality of Life Health Service. R. 41–42. The ALJ specifically cited Ms. Curry's March 2018 visit to RMC Jacksonville for "head pain that radiated in the left side of the neck and left shoulder," and for which x-rays revealed no abnormal findings and Ms. Curry was prescribed medication and advised to follow up with her primary care physician. R. 41. The ALJ also cited Ms. Curry's January 2019 visit to Gadsden Regional Medical Center "with complaints of head pain." R. 41. At the time, Ms. Curry's symptoms were generally negative, her examination was normal, and a CT scan revealed no abnormal findings. R. 41. The ALJ also cited Ms. Curry's visits to Quality of Life Health Services in January 2019, August 2019, August 2020, November 2020, and December 2020, and went allegation-by-allegation to discuss the objective medical evidence. R. 41–43. After considering this medical evidence along with the administrative medical findings and the "evidence of record," the ALJ concluded that Ms. Curry's:

> allegation of disability is simply disproportionate to what
> the record can reasonably support. So, while the claimant

may have some limiting impairments, they cannot, in any fair consideration, be considered to be of a truly catastrophic or disabling nature. Those limitations that have a conceivable basis in the verifiable impairments described in the medical files have been duly accounted for in determining [Ms. Curry's] residual functional capacity, generously so in fact. Because of [Ms. Curry's] alleged physical limitations, the undersigned has limited [Ms. Curry] to light work activity. Likewise, environmental restrictions were put in place by way of precaution more than by physical necessity.

R. 42, 44.

Substantial evidence supports the ALJ's finding under the pain standard. As the Commissioner noted, "[t]he ALJ properly applied the Eleventh Circuit's pain standard, clearly articulating explicit and adequate reasons for discounting [Ms. Curry's] subjective allegations of disabling symptoms." Doc. 11 at 8 (citing R. 41–44).

In analyzing Ms. Curry's testimony, the ALJ clearly discussed the objective medical evidence related to her complaints, including medical evidence before the alleged onset date. R. 41–44. The ALJ recognized that Ms. Curry had presented to health care providers for: head pain, radiating pain to the left side of the neck and left shoulder, scalp pain and swelling, hair falling out, neck pain, gastro-esophageal reflux disease, cervicalgia, obesity, muscle spasms, hypertension, low back pain, hypothyroidism, joint pain, systemic lupus erythematosus, edema, and chronic pain. R. 41–42. However, the ALJ also cited normal x-ray and CT scan results, R. 41–42,

generally conservative treatment, such as neck and back exercises and medication, R. 41–42, generally normal physical examinations, R. 41–42, and medical advice to continue current care, R. 43.

The ALJ was not "clearly wrong" to discount Ms. Curry's subjective complaints. *See Werner*, 421 F. App'x at 938–39. Additionally, Ms. Curry has pointed to no evidence that would compel a different conclusion from that found by the ALJ. There is no evidence in the record to support Ms. Curry's testimony that her conditions prevent light work with the restrictions identified by the ALJ. Accordingly, there is no error in the ALJ's consideration of Ms. Curry's subjective complaints.

## B. Appeals Council Treatment of Updated Evaluation

A claimant generally may present new evidence at each stage of the administrative process, including to the Appeals Council. *Ingram v. Comm'r*, 496 F.3d 1253, 1261 (11th Cir. 2007). The Appeals Council will review a case if it "receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 416.1470(a)(5).

Evidence is not new when it is cumulative of evidence already submitted to the ALJ. *Clough v. Comm'r*, 813 F. App'x 436, 443 (11th Cir. 2020). Evidence is

21

material when it is "relevant and probative so that there is a reasonable possibility that it would change the administrative result." *Milano v. Bowen*, 809 F.2d 763, 766 (11th Cir. 1987). New medical opinions submitted to the Appeals Council are not material if they are inconsistent with medical records considered by the ALJ because "there is no reasonably possibility that the new evidence would change the administrative result." *Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1309 (11th Cir. 2018). New evidence is chronologically relevant if it "relates to the period on or before the date of the [ALJ] hearing decision." 20 C.F.R. § 416.1470(a)(5). Medical opinions based on treatment occurring after the date of the ALJ's decision may still be chronologically relevant if they relate back to a time on or before the ALJ's decision. *Washington v. Comm'r*, 806 F.3d 1317, 1322 (11th Cir. 2015).

The Appeals Council is not required to provide a detailed rationale for why each piece of new evidence fails to change the ALJ's conclusion. *Mitchell v. Comm'r*, 771 F.3d 780, 784 (11th Cir. 2014). The court reviews *de novo* whether supplemental evidence is new, material, and chronologically relevant. *Washington*, 806 F.3d at 1321.

Ms. Curry argues that the evidence she submitted to the Appeals Council supports her claim and that "[t]he Appeals Council committed reversible error when they decided that [it] did not relate to the period of time she claimed to be disabled." Doc. 10 at 15–16.

22

Dr. Muhammad completed a Physical Capacity Evaluation on May 20, 2021, which Ms. Curry submitted to the Appeals Council. R. 20–21. In it, he opined that Ms. Curry could sit for a maximum of one hour at a time in an eight-hour workday and stand and walk for zero hours at a time in an eight-hour workday. R. 20. He also opined that Ms. Curry could sit for a total of two hours in an eight-hour workday and stand and walk for a total of one hour in an eight-hour workday. R. 20. While Dr. Muhammad said that Ms. Curry could occasionally lift or carry up to five pounds, he reported that she could never lift or carry more than five pounds. R. 21. Dr. Muhammad also stated that Ms. Curry could occasionally: use her arms and hands for actions such as pushing and pulling; use her hands for simple grasping, fine manipulation, and fingering or handling; use her feet and legs for actions such as pushing and pulling; bend; squat; crawl; climb; and reach. R. 21. Dr. Muhammad did not believe Ms. Curry needed restrictions for unprotected heights, moving machinery, driving automotive equipment, or dust, fumes, and gases. R. 21. However, he did believe Ms. Curry required mild restrictions for marked changes in temperature and humidity. R. 21.

Dr. Muhammad also completed a form regarding non-exertional factors affecting Ms. Curry. R. 22. In it he reported that Ms. Curry experiences chronic, continuous, moderately-severe pain. R. 22. He said that x-rays and muscle spasms were objective signs of Ms. Curry's pain. R. 22. Dr. Muhammad opined that Ms.

Curry would need constant rest periods during the day to walk about or lie down to relieve pain. R. 22. Dr. Muhammad reported that he had prescribed hydrocodone as needed and Flexeril for Ms. Curry's pain, and that these medications resulted in drowsiness. R. 22. He also opined that Ms. Curry's medical condition, attendant limitations, pain, or side effects of medications would likely result in her missing three or more days per month from work. R. 22.

Finally, Dr. Muhammad completed a supplemental questionnaire. R. 23. In it, he opined on Ms. Curry's "current psychiatric impairment." R. 23. He stated she had: no impairment with comprehending and following instructions; moderate impairment with performing work requiring minimal or frequent contact with others; moderately severe impairment with her ability to relate to other people, personal habits, and performing simple, complex, repetitive, or varied tasks; and a severe impairment in daily activities ("ability to attend meetings . . . , work around the house, socialize with friends and neighbors, etc.") and constriction of interests. R. 23–24. Dr. Muhammad stated that Ms. Curry's impairment has "lasted or can . . . be expected to last for 12 months or longer at the level of severity indicated." R. 24.

According to the Appeals Council, Ms. Curry "submitted physical capacities evaluation from Dr. Tariq Muhammad dated May 20, 2021 (10 pages). The Administrative Law Judge decided your case through March 3, 2021. This additional evidence does not relate to the period at issue. Therefore, it does not affect the

decision about whether you were disabled beginning on or before March 3, 2021."
R. 2.

The Appeals Council did not err in finding that the "additional evidence does not relate to the period at issue." R. 2. With respect to the additional evidence, it was completed by a medical provider at Quality of Life Health Services where Ms. Curry had a treatment history. Other medical providers from that clinic treated her from 2012 to 2016 for various ailments, including hypertension, depression, hypothyroidism, abdominal pain, sleep apnea, esophageal reflux, shortness of breath, pain and numbness in foot, and pelvic pain. Ms. Curry also presented to Dr. Muhammad at Quality of Life Health Services in December 2017, January 2019, August 2019, April 2020, July 2020, August 2020, October 2020, and December 2020. However, there is no indication that the information in the additional evidence dated May 20, 2021 related to the period at issue – namely, the alleged onset date of September 10, 2019 through the date of the ALJ's decision, March 3, 2021. The question before the court is whether Ms. Curry was "entitled to benefits during a specific period of time, which period was necessarily prior to the date of the ALJ's decision." *Wilson v. Apfel*, 179 F.3d 1276, 1279 (11th Cir. 1999). Because the additional evidence completed by Dr. Muhammad almost three months after the ALJ decision does not indicate that it relates back to the period at issue, it is not chronologically relevant.

In any event, even if the additional evidence were chronologically relevant, it does not change the result. According to the Commissioner, "there is no reasonable probability that [Dr. Muhammad's opinion] would change the administrative result." Doc. 11 at 25–26. The court agrees that Dr. Muhammad's opinion is immaterial because it is contradicted by objective medical evidence from the relevant period as well as his own examination results. *See supra* Section III; R. 41–44. Because the additional evidence is immaterial, the Appeals Council did not err by failing to grant review.

### C. Lack of SSA-Directed Consultative Examination

A disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual claiming benefits must prove that she is disabled. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). The burden is on the claimant to introduce evidence in support of her application for benefits. *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

The Commissioner is not required to hire an expert medical source when determining whether a claimant is disabled. 20 C.F.R. §§ 416.917, 416.919a(b); *Klawinski v. Comm'r of Soc. Sec.*, 391 F. App'x 772, 776 (11th Cir. 2010) (holding

that because "the ALJ ultimately found that [claimant] was not disabled . . . SSR 83–20 only required the ALJ to obtain a medical expert in certain instances to determine a disability onset date"); *Wilson v. Apfel*, 179 F.3d 1276, 1278 (11th Cir. 1999) (recognizing that the ALJ is not "obligated to seek independent, additional expert medical testimony" when the record is sufficient to support the ALJ's decision). Instead, "the ALJ has a basic obligation to develop a full and fair record." *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "The court should be guided by whether the record reveals evidentiary gaps which result in unfairness or 'clear prejudice.'" *Id.* at 1423.

Ms. Curry argues that "[t]he ALJ erred when she denied Ms. Curry's request that she be sent for a consultative examination and made a decision that she had sufficient evidence in the record to make a determination regarding Ms. Curry's disability." Doc. 10 at 11.

In her decision, the ALJ acknowledged Ms. Curry's request for a consultative examination. R. 34. The ALJ denied this request because Ms. Curry "was receiving medical care with the most recent treatment notes (December 2020) indicating stable hypertension and a Review of Symptoms that was negative for dizziness, extremity weakness, gait disturbance, headache, memory impairment, numbness, seizures, anxiety, depression[,] and insomnia." R. 34–35. The ALJ concluded that she "found

sufficient evidence to make a determination, without the need of a consultative examination." R. 35.

As noted above, the medical record provided substantial evidence to support the ALJ's findings in this case. *See supra* Section V.A. The objective medical evidence spans from 2012 through the end of 2020, and include imaging results, test results, physical examination findings, and recommendations for continued care. *See id.* Ms. Curry speculates that a consultative examination would support her claim, but that is not a basis for an ALJ to order a consultative examination. Additionally, Ms. Curry has not shown she was prejudiced by the lack of an SSA-directed consultative examination. Substantial evidence supports the ALJ's consideration of Ms. Curry's impairments, and Ms. Curry has failed to establish that the ALJ had any obligation to further develop the record.

## VI.  Conclusion

Upon review of the administrative record, the court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

**DONE** and **ORDERED** this 13th day of March, 2023.

**ANNA M. MANASCO**
UNITED STATES DISTRICT JUDGE